**25-1457**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ROBERT MCGUIRE,
Plaintiff-Appellee,

v.

CALVIN JOHNSON,
Defendant-Appellant

and

NEVADA DEPARTMENT OF CORRECTIONS and
WILLIAM GITTERE,
Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 3:23-cv-00165-ART-CLB

**DEFENDANT-APPELLANT'S OPENING BRIEF**

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendant-Appellant*
*Calvin Johnson*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS .................................................................ii

TABLE OF AUTHORITIES ........................................................iv

I.    INTRODUCTION..............................................................1

II.    JURISDICTIONAL STATEMENT ...................................2

III.   STATEMENT OF THE ISSUES PRESENTED.............4

IV.   STATEMENT OF CASE AND PROCEDURAL HISTORY ...........5

V.    STANDARD OF REVIEW ...............................................11

VI.   SUMMARY OF ARGUMENT ........................................12

VII.  ARGUMENTS ..................................................................13

      A.    Warden Johnson Is Entitled to Qualified Immunity under Established Precedent...................................13

      B.    Warden Johnson Is Entitled to Qualified Immunity Because He Did *NOT* Violate the Eighth Amendment........15

      C.    McGuire's Conditions of Confinement During the COVID-19 Pandemic Did *NOT* Violate the Eighth Amendment ........................................................26

      D.    McGuire Failed to Establish that Any Supposed Shortcomings When Implementing NDOC's COVID-19 Protocols Caused McGuire Harm .........................................29

      E.     McGuire Failed to Meet His Burden of Establishing a
              Violation of Clearly Established Law, Beyond Debate,
              Required to Overcome Qualified Immunity ..........................32

VIII.  CONCLUSION ...................................................................36

CERTIFICATE OF COMPLIANCE........................................37

CERTIFICATE OF SERVICE.................................................38

iii

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Allen v. Sakai*, 48 F.3d 1082 (9th Cir. 1994) ........................................33

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001)....................................................................................... 11, 32

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)..............................................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................17

*Bearchild v. Cobban*, 947 F.3d 1130 (9th Cir. 2020) ............................30

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ...............................................2

*Block v. City of Los Angeles*, 253 F.3d 410 (9th Cir. 2001)....................20

*Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003)..........................................17

*Campbell v. California Dept. of Corr. & Rehab.*, 463 Fed. Appx. 634, 2011 WL 6425312 (9th Cir. 2011)..............................................29

*Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024).................... 3, 14, 34, 35

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................12

*Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004) .............................19

*City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9 (2021).....................14

*Cox v. Benedetti*, 114 Fed. Appx. 939, 2004 WL 2915113 (9th Cir. 2004)................................................................................................31

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000)...........................32

*Curley v. City of N. Las Vegas*, 772 F.3d 629 (9th Cir. 2014)................11

iv

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ........................... 11, 12

*Farmer v. Brennan*, 511 U.S. 825 (1994) ..................................... 15, 16, 23

*Felkins v. City of Lakewood*, 774 F.3d 647 (10th Cir. 2014) .................. 31

*Fraihat v. U.S. Immigration & Customs Enf't*, 16 F.4th 613 (9th Cir. 2021) ...................................................................... 26, 27

*Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) ...................................... 31

*Hampton v. California*, 83 F.4th 754 (9th Cir. 2023) ............................. 21

*Hudson v. Palmer*, 468 U.S. 517 (1984) ................................................. 16

*In re Brazier Forest Products, Inc.*, 921 F.2d 221 (9th Cir. 1990) .......... 12

*Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002) .................................... 17

*Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406 (9th Cir. 1987) ................. 20

*Kayser v. Caspari,* 16 F.3d 280 (8th Cir. 1994) ................................. 30, 31

*Kisela v. Hughes*, 584 U.S. 100 (2018) ............................................. 14, 15

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) ................................... 17, 29

*LeMaire v. Maass*, 12 F.3d 1444 (9th Cir. 1993) .................................... 33

*Matylinsky v. Angelone*, 33 F.3d 59 (9th Cir. 1994) .............................. 19

*Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975 (9th Cir. 2006) ........................................................................... 11, 12

*Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918 (9th Cir. 2021) .................................................................. 18, 19, 33, 34, 35

*Norwood v. Vance*, 591 F.3d 1062 (9th Cir. 2010) .......... 21, 23, 24, 33, 35

*Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998) ................... 20

v

*Panchev v. Pac. Gas & Elec. Co.*, 825 Fed. Appx. 462, 2020 WL 5511817 (9th Cir. 2020) ....................................................... 30

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ................................................. 3

*Reichle v. Howards*, 566 U.S. 658 (2012) ............................................ 14

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) ............................... 14, 15

*River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458 (9th Cir. 1992) ..................................................................... 12

*Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703 (9th Cir. 2010)........................................................................................ 4

*Scott v. Harris,* 550 U.S. 372 (2007)........................................................... 3

*Sibley v. Dart*, 435 F. Supp. 3d 920 (N.D. Ill. 2019) ............................... 19

*Spain v. Procunier*, 600 F.2d 189 (9th Cir. 1979) ................................... 33

*Swain v. Junior*, 961 F.3d 1276 (11th Cir. 2020) .................................... 27

*Toussaint v. Yockey*, 722 F.2d 1490 (9th Cir. 1984) ......................... 33, 34

*Valentine v. Collier*, 978 F.3d 154 (5th Cir. 2020) ................................. 27

*Walker v. Shansky*, 28 F.3d 666 (7th Cir. 1994) ..................................... 31

*Wilhelm v. Rotman*, 680 F.3d 1113 (9th Cir. 2012) ................................ 29

*Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983) ................................ 18

*Williams v. Wood*, Case No. 06–55052, 223 Fed. App'x 670 (9th Cir. 2007)........................................................................................ 16

*Yeager v. Bowlin*, 693 F.3d 1076 (9th Cir. 2012) .................................... 20

## **STATUTES**

28 U.S.C. § 1291 ................................................................. 2

## **RULES**

9th Cir. R. 32-1 .............................................................. 37

Fed. R. App. P. 32 ......................................................... 37

Fed. R. App. P. 4 ............................................................. 2

Fed. R. Civ. P. 56 ........................................................ 11

Fed. R. Evid. 701 ........................................................ 31

## I.    INTRODUCTION

The district court erred when denying the motion for summary judgment of Defendant-Appellant Calvin Johnson, a warden with the Nevada Department of Corrections (NDOC).  Contrary to the district court's erroneous conclusions, when facing a genuine emergency, such as the unprecedented COVID-19 global pandemic, the Supreme Court and this Court have repeatedly held that decisions made to combat the emergency should be made by prison officials, such as Warden Johnson, and ***not*** judges and juries, and not be made after the fact with the benefit of hindsight. No case has held that the Eighth Amendment requires offenders, such as Plaintiff-Appellee Robert McGuire, to be provided outdoor exercise when the restrictions on outdoor exercise are instituted for safety of offenders during the midst of an unprecedented global pandemic, a true emergency situation, especially when similar restrictions were in place throughout the world for everyone.

Instead, this Court has refused to recognize a right to outdoor exercise under the Eighth Amendment.  Given the discretion provided to prison officials when responding to a genuine emergency, this Court has unsurprisingly held that outdoor exercise may be restricted for years when responding to emergencies such as COVID-19.

McGuire's Eighth Amendment claim is therefore barred by qualified immunity.  Warden Johnson did not violate any of McGuire's

rights, much less a right clearly established beyond debate, which is required to overcome qualified immunity. Considering the unique nature of the COVID-19 pandemic and the lack of any precedent establishing that Warden Johnson's personal actions violated the Eighth Amendment, qualified immunity protects Warden Johnson because no reasonable official would have understood that any constitutional right was violated.

The district court therefore erred when denying Warden Johnson's motion for summary judgment because he is protected by qualified immunity. This Court should therefore reverse the district court's judgment denying Warden Johnson's motion for summary judgment, and remand with instructions to fully grant his motion.

## II. JURISDICTIONAL STATEMENT

This Court has jurisdiction over Defendants' appeal pursuant to 28 U.S.C. § 1291 because Defendants' notice of appeal (3-ER-477-78) was timely filed on March 5, 2025, within thirty (30) days after the district court entered its order, on February 21, 2025 (1-ER-2-12), partially denying Defendants' motion for summary judgment asserting qualified immunity. *See* Fed. R. App. P. 4; *see also Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996) (holding "an order rejecting the defense of qualified immunity" is a "'final' judgment subject to an immediate

appeal," which may be raised "at either the dismissal stage or the summary judgment stage").

The Court also has jurisdiction, even though the district court determined that McGuire raised a genuine dispute of material fact. In *Plumhoff v. Rickard*, 572 U.S. 765, 772–73, (2014) the Supreme Court rejected the argument that an appellate court lacks jurisdiction to exclude immaterial or improperly admitted evidence when reviewing issues, and explained that an appellate court merely lacks jurisdiction over "a question of 'evidence sufficiency,'" i.e. when the material, admissible "evidence in the summary judgment record was sufficient to support a contrary finding." 572 U.S. at 772-73. In reaching that result, the Court relied upon its holding in *Scott v. Harris,* 550 U.S. 372 (2007). *Plumhoff*, 572 U.S. at 773. In *Scott*, the Court had no doubts about jurisdiction, even though the plaintiff's version of the facts told "quite a different story," when the court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. at 380-81; *see also Plumhoff*, 572 U.S. at 773; *Carley v. Aranas*, 103 F.4th 653, 658-59 (9th Cir. 2024) (holding even when the "district court conclude[s] that there is still a genuine dispute of material fact," this Court has jurisdiction to determine "whether the defendant would be entitled to qualified immunity as a matter of law," after "assuming all factual dispute are resolved, and all reasonable inferences are

3

drawn, in plaintiff's favor"); *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.,* 605 F.3d 703, 707 (9th Cir. 2010) (rejecting argument that the court "lack[ed] jurisdiction to review . . . the question of qualified immunity" because "a genuine issue of material fact exists" and holding this Court "undoubtedly ha[s] jurisdiction to determine whether, taking the facts in the light most favorable to plaintiffs, defendants would have violated a constitutional right" because the Court may "disregard material factual disputes identified by the district court"). Accordingly, this Court has jurisdiction to consider whether Warden Johnson is entitled to qualified immunity after construing the facts, supported by evidence in the record that would be admissible at trial, in McGuire's favor.

## III. STATEMENT OF THE ISSUES PRESENTED

**A.** Whether the district court erred when denying Warden Johnson's motion for summary judgment on McGuire's Eighth Amendment outdoor exercise claim as Warden Johnson is shielded by qualified immunity because McGuire had no right to outdoor exercise, and any restriction on exercise was due to a genuine emergency seeking to prevent the spread of COVID-19.

**B.** Whether Plaintiff failed to meet his burden of proof that Warden Johnson personally violated a right, clearly established beyond

4

debate, required to overcome Warden Johnson's entitlement to qualified immunity.

## IV.   STATEMENT OF CASE AND PROCEDURAL HISTORY

McGuire is an offender legally incarcerated by NDOC. 2-ER-179-200, ECF No. 43-2.   In response to the unprecedented COVID-19 pandemic, on March 12, 2020, a day before President Donald Trump declared a nationwide emergency, Governor Steve Sisolak issued a Declaration of Emergency to facilitate Nevada's response to the COVID-19 pandemic.   See Motion for Judicial Notice (MJN) Exhibit A, at Ex-A-001.[1]   As a result, a team led by the NDOC Medical Director was formed to establish specific protocols for addressing COVID-19.   MJN Exhibit B, at Ex-B-002.   As of June 25, 2020, due to the diligence of NDOC staff, NDOC had the 8th lowest positive COVID-19 infection rate of offenders in the nation.   MJN Exhibit C, at Ex-C-001.   By the end of June 2020, all NDOC offenders had been tested and only 23 or .19% tested positive for COVID-19.   NDOC also tested its entire workforce and only 84 or .9% of staff tested positive.   NDOC, however, continued to modify its COVID-19 protocols in order to protect offenders and staff.   MJN Exhibit D, at Ex-D-001-2; 2-ER-124; ECF No. 48 at 37:10-15.

---

[1] Exhibits are attached to Defendants-Appellants' Motion for Judicial Notice.

On August 18, 2020, McGuire was transferred to High Desert State Prison (HDSP), and was assigned housing in Unit 3, Pod A, an administrative segregation (AD-Seg) unit. 2-ER-177, 185; ECF Nos. 43-1 at 4, 43-2 at 8. McGuire was placed in administrative segregation due to his institutional violence in the last five (5) years and was to remain in administrative segregation pending a full classification hearing for proper placement. 2-ER-185-86; ECF No. 43-2 at 8-9. McGuire, however, was quarantined for two weeks, and was released from quarantine when he tested negative for COVID-19. 3-ER-315; ECF No. 33 at 3.

While in administrative segregation, McGuire was cleared for exercise, showers and phones as "a walk alike inmate only." 2-ER-185; ECF No. 43-2 at 8. McGuire was permitted out-of-cell time (tier time), up to one hour per day, seven days a week, as possible. 2-ER-206, 272-73; ECF Nos. 43-4 at 2, ¶ 5, 43-8 at 2-3. While on tier time, McGuire could shower, use the phone, interact with other inmates, and participate in educations courses as eligible. 2-ER-206; ECF No. 43-4 at 2, ¶ 6. McGuire's unit was also scheduled to attend outdoor exercise (yard time) at least two hours a week. 2-ER-206, 284-87; ECF Nos. 43-4 at 2, ¶ 6, 43-11 at 2-5. [2]

---

[2] *See* 2-ER-37 (McGuire admitting "18 months total of only 2 hours yard per week"); 2-ER-40 (admitting "18 months of only 2 hours

An AD-Seg review, held on September 23, 2020, determined that McGuire was to remain in administrative segregation pending warden approval to be placed in the general population, special management unit (SMU/GP). 2-ER-186; ECF No. 43-2 at 9.

On September 29, 2020, McGuire received another classification review. 2-ER-186; ECF No. 43-2 at 9. Due to a history of institutional violence and a high number of points, McGuire was housed in SMU/GP, which is a close custody unit. 2-ER-186; ECF No. 43-2 at 9. McGuire's tier time and outdoor exercise time remained the same. 2-ER-206, 272-73, 284-87; ECF Nos. 43-4 at 2, ¶¶ 5-6, 43-8 at 2-3, 43-11 at 2-5.

On October 23, 2020, McGuire submitted an informal grievance, complaining that he was without yard time "[f]or at least 45 days" due to a "covid outbreak." 2-ER-127-28, 237; ECF Nos. 43-5 at 30, 48 at 40-41. McGuire, however, admitted that he had been provided one hour a yard time that week. 2-ER-128; ECF No. 48 at 41. McGuire did not complain about any loss of tier time, or any harm to his health due to the lack of outdoor exercise. 2-ER-127-28, 237; ECF Nos. 43-5 at 30, 48 at 40-41. While on lockdown, McGuire was able to exercise in his cell.

---

weekly outdoor rec."); 2-ER-43 (admitting "then 2 hours or less for 18 months straight while on 22 hour daily lock-down"); 2-ER-50 (admitting "approximately 18 months of only quad outdoor recreation max. 2 hours weekly"); 2-ER-138 (admitting "18 more months w/ maximum of 2 hours weekly outdoor recreation").

2-ER-206; ECF No. 43-4 at 3, ¶ 9.  On March 30, 2021, McGuire's grievance was denied because the lockdown was due to emergency situations, as permitted by HDSP OP 404.  2-ER-129, 237; ECF Nos. 43-5 at 30, 48 at 42.

Also on March 30th, McGuire was moved to administrative segregation due to pending disciplinary charges for possession of contraband.  2-ER-186-87; ECF No. 43-2 at 9-10.  Upon being found "not guilty,"  McGuire was returned to placement in the SMU/GP on April 29, 2021.  2-ER-186-87; ECF No. 43-2 at 9-10.  While in administrative segregation and in the SMU/GP, McGuire continued to be provided out-of-cell time (tier time), up to one hour per day, seven days a week, as possible, and was also scheduled to attend outdoor exercise (yard time) at least two hours a week.  2-ER-206, 272-73, 284-87; ECF Nos. 43-4 at 2, ¶¶ 5-6, 43-8 at 2-3, 43-11 at 2-5.

On May 5, 2021, McGuire appealed the denial of his grievance to the first level.  2-ER-130, 237; ECF Nos. 43-5 at 30, 48 at 43.  On June 9, 2021, Warden Johnson denied the grievance because McGuire's unit was locked down on "numerous occasions" due to "COVID, Emergency Situations and Incidences," as permitted by HDSP OP 404.  2-ER-131, 237; ECF Nos. 43-5 at 30, 48 at 44.

On August 26, 2021, McGuire appealed the denial of his grievance to the second level.  2-ER-132, 237; ECF Nos. 43-5 at 30, 48 at 45.  On

March 1, 2023, NDOC Deputy Director William Gittere denied the grievance because McGuire's unit was "locked down on numerous occasions due to COVID-19, emergency situations and incidences," as permitted by HDSP OP 404. 2-ER-133, 238; ECF Nos. 43-5 at 31, 48 at 46.

Previously, on June 10, 2022, McGuire was returned to administrative segregation due to institutional restructuring, where he remained until his transfer to Ely State Prison on September 27, 2022. 2-ER-188; ECF No. 43-2 at 11. While in administrative segregation, McGuire was cleared for exercise, showers and phones as "a walk alike inmate only." 2-ER-188; ECF No. 43-2 at 11. McGuire also continued to be provided out-of-cell time (tier time), up to one hour per day, seven days a week, as possible, and was also scheduled to attend outdoor exercise (yard time) at least two hours a week. 2-ER-206, 272-73, 284-87; ECF Nos. 43-4 at 2, ¶¶ 5-6, 43-8 at 2-3, 43-11 at 2-5. Due to the precautions taken by NDOC to protect offenders from COVID-19, McGuire never contracted COVID-19. 2-ER-109; ECF No. 48 at 22. On January 6, 2023, Governor Joe Lombardo terminated the state of emergency caused by the global COVID-19 pandemic. MJN Exhibit E, at Ex-E-001-2.

In a complaint dated March 16, 2023, McGuire alleged, among other claims, that Warden Johnson violated the Eighth Amendment by

not providing McGuire sufficient outdoor exercise. Contrary to the sworn statement in his informal grievance, asserting a lack of yard time for 45 days (2-ER-127-28, 237; ECF Nos. 43-5 at 30, 48 at 40-41), McGuire alleges in his complaint a lack of outdoor recreation for "3 straight months." 3-ER-456-57, 459; ECF No. 4 at 3-4, 6. In his complaint, McGuire admits that from December 2020, to June 1, 2022, he was provided 1 hour of yard time each week. 3-ER-456, 458-60; ECF No. 4 at 3, 5-7.

Because Warden Johnson did not violate McGuire's rights, Warden Johnson moved for summary judgment, on October 30, 2024, asserting qualified immunity. 2-ER-155-288, ECF No. 45. After the motion was fully briefed (2-ER-81-136, ECF Nos. 48, 49), the Magistrate Judge properly recommended granting Warden Johnsons' motion in a Report and Recommendation filed on December 6, 2024. 1-ER-13-26, ECF No. 50.

McGuire objected to the Report and Recommendation (2-ER-36-80; ECF No. 51), which Warden Johnson opposed (2-ER-31-35, ECF No. 52). On February 21, 2025, the district court improperly denied Defendants' motion for summary judgment with respect to McGuire's Eighth Amendment outdoor exercise claim against Warden Johnson. 1-ER-2-12, ECF No. 55. As Warden Johnson did not violate McGuire's rights, much less rights that were clearly established, Warden Johnson

10

timely filed a notice of appeal on March 5, 2025.  3-ER-477-78, ECF No. 59.

## V.  STANDARD OF REVIEW

A ruling on a motion for "summary judgment is reviewed *de novo*." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).  This Court "may affirm a grant of summary judgment on any ground supported by the record, even one not relied upon by the district court." *Curley v. City of N. Las Vegas*, 772 F.3d 629, 631 (9th Cir. 2014). "Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when, viewing the facts in the light most favorable to the nonmoving party, (1) there is no genuine issue of material fact, and (2) the moving party is entitled to summary judgment as a matter of law." *Arpin*, 261 F.3d at 919.  In *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), this Court explained that the "party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial."  To meet this burden when "the nonmoving party has the burden of proof at trial, the moving party need only point out [by argument] that there is an absence of evidence to support the nonmoving party's case." *Id.*; *see also Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (same). "The moving party need not disprove the other party's case." *Id.*  Once the moving party makes this showing, "the adverse

11

party may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076. "Only admissible evidence may be considered in deciding a motion for summary judgment." *Miller*, 454 F.3d at 987. "Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id*. at 988. "To survive a motion for summary judgment, plaintiffs must produce sufficient evidence to establish the existence of every essential element of their case on which they will bear the burden of proof at trial." *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992). "If the nonmoving party fails to make such a showing, summary judgment will be granted because 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *In re Brazier Forest Products, Inc.*, 921 F.2d 221, 223 (9th Cir. 1990) quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## VI. SUMMARY OF ARGUMENT

Warden Johnson is entitled to qualified immunity. He did not violate McGuire's rights under the Eighth Amendment. McGuire has no Eighth Amendment right to outdoor exercise, especially when the

restrictions on outdoor exercise are instituted for safety of offenders during the midst of an unprecedented global pandemic, which constituted a true emergency.

Warden Johnson therefore is protected by qualified immunity because McGuire cannot establish a violation of a constitutional right, much less a violation of a right clearly established, beyond debate. Accordingly, this Court should reverse the district court's judgment denying Warden Johnson's motion for summary judgment, and remand with instructions to the district court to grant Warden Johnson's motion in all respects.

## VII. ARGUMENTS

### A. Warden Johnson Is Entitled to Qualified Immunity under Established Precedent

This Court should reverse the district court's denial of Warden Johnson's motion for summary judgment because he is entitled to qualified immunity. In *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), the Supreme Court held "[q]ualified immunity shields . . . state officials from money damages unless a plaintiff . . . show[s] (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 743. In *Reichle v. Howards*, 566

U.S. 658, 664, (2012), the Supreme Court explained to "be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." The "right allegedly violated must be established, not as a broad general proposition, but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id*. at 665. "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 664. "This 'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can reasonably anticipate when their conduct may give rise to liability for damages." *Id*.

In *Carley*, this Court recognized "the Supreme Court 'has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.'" 103 F.4th at 660–61, quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). "It is not enough that a rule be suggested by then-existing precedent." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021). "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). "This inquiry must be undertaken in light of the specific context of the case, not as a broad

general proposition." *Id*. "Thus, to show a violation of clearly established law, [plaintiff] must identify a case that put [each defendant] on notice that his specific conduct was unlawful." *Id*. Officers "are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 584 U.S. at 104. "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id*. at 105. Accordingly, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 104.

The district court erred when denying Warden Johnson's motion for summary judgment because McGuire failed to show a violation of a right, much less a right clearly established, beyond debate, required to overcome qualified immunity.

## B. Warden Johnson Is Entitled to Qualified Immunity Because He Did *NOT* Violate the Eighth Amendment

The Eighth Amendment requires prison officials to provide "humane conditions of confinement" with due regard for inmate health and safety. *Farmer v. Brennan*, 511 U.S. 825, 832, 837 (1994). To show a violation, an inmate must first "objectively" establish that he was "incarcerated under conditions posing a substantial risk of serious

15

harm." *Id*. at 834. Second, the inmate must establish that the official "was subjectively aware of the risk," but "deliberate indifferen[t] to [an] inmate['s] health or safety." *Id*. at 829, 834.

For a risk to be "objectively" "substantial" under the first prong, an inmate must show more than a risk of serious harm which is merely possible. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Accordingly, to show an objectively substantial risk of serious harm, the inmate must establish "a 'strong likelihood' rather than a 'mere possibility'" of harm. *Williams v. Wood*, Case No. 06–55052, 223 Fed. App'x 670, 671 (9th Cir. 2007) (holding that "speculative and generalized fears of harm . . . do not rise to a sufficiently substantial risk of serious harm").

Under the second "subjective" prong, "deliberate indifference" can only be established if the prison official "knowingly and unreasonably disregard[s] an objectively intolerable risk of harm." *Farmer*, 511 U.S. at 824, 828, 837. "[D]eliberate indifference entails something more than mere negligence." *Id*. at 835. The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. A prison "official's failure to alleviate a significant risk that he should have perceived but did not" does not establish deliberate indifference. *Farmer*, 511 U.S. at 838.

16

Moreover, McGuire must establish that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). To "be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which the plaintiff complains." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in the original). "In order to prevail and recover damages against any of the named prison officials," McGuire "must prove (1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the eighth amendment and (2) that this indifference was the actual and proximate cause of the deprivation of the inmates' eighth amendment right to be free from cruel and unusual punishment." *Id*. at 634. When determining whether any Defendant violated the Eighth Amendment, "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which [the courts] are ill-equipped." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003).

17

Contrary to the district court's conclusion, the mere lack of outdoor exercise does not pose an objective risk of serious harm necessary to violate the Eighth Amendment. In *Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 929 (9th Cir. 2021), this Court declared: "[W]e have never held that all deprivations of outdoor exercise are per se unconstitutional." To the contrary, this Court has "not imposed a rigid requirement of outdoor exercise regardless of the other opportunities for physical exercise that a correctional institution afford." *Id.* This Court held that when the plaintiff fails to establish that "his movements were restricted to the point that he is unable to exercise inside his cell or in jail common areas," then "the plaintiff failed to state a sufficiently serious constitutional deprivation." *Id.* at 932. This Court ruled "the Constitution requires jail officials to provide outdoor recreation opportunities, *or otherwise meaningful recreation*, to prison inmates." *Id.* (emphasis in the original). This Court viewed favorably that the "Fifth Circuit rejected a claim" brought by a "maximum-security inmate," alleging an Eighth Amendment violation, "based on his confinement for more than seven years without outdoor exercise and sunshine." *Id.* at 932, citing *Wilkerson v. Maggio*, 703 F.2d 909, 911-12 (5th Cir. 1983). This Court noted the "Fifth Circuit . . . 'conclude[d] . . . that one hour a day of exercise provided on the indoor tier satisfied the constitutional minimum.'" *Norbert*, 10 F.4th at 932.

18

McGuire does not provide any objective evidence of a risk of harm due to a lack of outdoor exercise. *See Norbert*, 10 F.4th at 934 (rejecting condition of confinement claim when inmate failed to establish that lack of outdoor exercise caused harm). Other than the last two-weeks in August 2020, when McGuire admits he was in quarantine, but alleges that he was without air conditioning (2-ER-51, ECF No. 51 at 16; 3-ER-321, ECF Nos. 33 at 9),[3] McGuire concedes that he was able to exercise in his cell despite the lockdown due to COVID-19. 2-ER-206; ECF No. 43-4 at 3, ¶ 9. McGuire asserts that he was without outdoor exercise

---

[3] Other than his conclusory statement, McGuire provides no explanation why he could not exercise in his cell due to the temperature. McGuire does not allege that he ever informed prison officials that he was unable to exercise in his cell due to heat. While exercising without air conditioning may not be as comfortable, McGuire does not allege that exercising without air conditioning adversely impacted his health in anyway. Before air conditioning was invented, people still exercised. For that reason, courts have held that air conditioning failures do not violate the Eighth Amendment. *See Sibley v. Dart*, 435 F. Supp. 3d 920, 930 (N.D. Ill. 2019) (relying this Court's decisions in "*Matylinsky v. Angelone*, 33 F.3d 59 (9th Cir. 1994)" for the proposition that "failure of the air conditioning in the disciplinary segregation unit did not constitute cruel and unusual punishment"); s*ee also Chandler v. Crosby*, 379 F.3d 1278, 1297–98 (11th Cir. 2004) (holding that a Florida prison did not violate the Eighth Amendment even when it provided no air conditioning whatsoever during the summer months).

for, at most, three months due to a COVID-19 lockdown.[4]  3-ER-456-57, 459; ECF No. 4 at 3-4, 6.  McGuire admits that two weeks of those three months he was in quarantine to ensure that he had not contracted COVID-19.  3-ER-315; ECF No. 33 at 3.  McGuire offers no evidence to contradict Warden Johnson's and Deputy Director Gittere's grievance responses that these lockdowns were required due to COVID-19.  2-ER-131, 133, 237-38; ECF Nos. 43-5 at 30-31, 48 at 44, 46.

---

[4]  In McGuire's sworn statement in his informal grievance, he merely alleged a lack of yard time for 45 days.  2-ER-127-28, 237; ECF Nos. 43-5 at 30, 48 at 40-41.  In a sworn statement dated March 18, 2024, McGuire again changed his story and affirmed that he had yard time "from October 23, 2020, till June 9, 2022."  3-ER-435, ECF No. 24-1 at 2.  As he was transferred to HDPS on August 18, 2020, at most, McGuire was without yard time for two-months, not three months.  His attempt to more than double the time he was without outdoor exercise, from the 45 days originally claimed, should be viewed as nothing more than a sham which should not be considered.  *See Yeager v. Bowlin*, 693 F.3d 1076, 1081-82 (9th Cir. 2012) (holding that when "disparity between [two sworn statements] is so extreme that the court must regard the differences between the two as contradictions" then the latter contradictory statement should be disregarded); *Block v. City of Los Angeles*, 253 F.3d 410, 419 n.2 (9th Cir. 2001) (holding a "party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts."); *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (holding that "contradictory statements in a subsequent declaration" was "a sham" because a "party cannot create a triable issue by contradicting his own sworn testimony"); *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1410 (9th Cir. 1987) (holding a "party opposing summary judgment cannot create a genuine question of fact by contradicting his prior sworn statement").

20

In *Norwood v. Vance*, 591 F.3d 1062, 1065, 1070 (9th Cir. 2010), this Court held that prison officials did not violate the Eighth Amendment based on the lack of "outdoor exercise for four separate extended lockdowns over the course of two years" when the "lockdown was in response to a genuine emergency." The Court determined that "[w]hile denying outdoor exercise for extended periods carried some risk of harm, officials' judgment that there was a greater risk of harm from allowing outdoor exercise was certainly reasonable" and therefore prison officials did not violate the Eighth Amendment. *Id.* at 1070. The Court reasoned when "a lockdown was in response to a genuine emergency, and restrictions were eased as the prison administration determined that the emergency permitted," we may not lightly second-guess officials' expert judgments about when exercise and other programs could safely be restored." *Id.* at 1069. The Court ruled: "It matters not whether the measures taken actually worked but whether prison officials reasonably believed they would be effective." *Id.* The Court concluded that these "decisions are delicate ones, and those charged with them must be given reasonable leeway" because the inmate "might have fared less well had prison officials been less cautious." *Id.* at 1069-70.

In *Hampton v. California*, 83 F.4th 754, 766 (9th Cir. 2023), this Court recognized that the "risk of contracting COVID-19 was

21

intolerably grave," and faulted prison officials for not taking precautions to protect inmates from COVID-19. Even if McGuire had been without any outdoor exercise during a three-month lockdown, COVID-19 was a genuine emergency. McGuire admits that this restriction was eased and that he was provided at least one hour a week of outdoor exercise for the next eighteen months, in addition to the one hour of tier time a day outside his cell. 2-ER-29, 48, 104, 108, ECF Nos. 48 at 18 & 21, 51 at 13, 53 at 2; 3-ER-456, 458-60; ECF No. 4 at 3, 5-7. McGuire even admits that during these eighteen months, outdoor exercise was permitted for two hours each week, as scheduled.[5] During tier time, McGuire admits that he could walk to and from the shower, walk to and from the phone, could interact with other inmates, and participate in educational courses as eligible. 2-ER-29, ECF No. 53 at 2; 2-ER-206; ECF No. 43-4 at 2, ¶ 6.

Even if denying or limiting outdoor exercise for extended periods carried some risk of harm, NDOC officials' judgment that COVID-19 represented a greater risk of harm, which required limiting outdoor

---

[5] *See* 2-ER-37 (admitting "18 months total of only 2 hours yard per week"); 2-ER-40 (admitting "18 months of only 2 hours weekly outdoor rec."); 2-ER-43 (admitting "then 2 hours or less for 18 months straight while on 22 hour daily lock-down"); 2-ER-50 (admitting "approximately 18 months of only quad outdoor recreation max. 2 hours weekly'); 2-ER-138 (admitting "18 more months w/ maximum of 2 hours weekly outdoor recreation").

exercise, was certainly reasonable. The district court erred by second guessing NDOC's expert judgment regarding prison administration during a true emergency. McGuire and the district court ignore that far greater harm could have befallen McGuire had NDOC been less cautious. Due to the precautions taken by NDOC to protect offenders from COVID-19, McGuire never contracted COVID-19. 2-ER-109; ECF No. 48 at 22. As McGuire cannot establish the "substantial" and "objective intolerable risk of serious harm," Warden Johnson did not violate the Eighth Amendment. *Farmer*, 511 U.S. at 837, 846.

The district court likewise erred when determining that Warden Johnson knew that the lack of outdoor exercise caused a serious risk of harm to McGuire. Because McGuire did not face a "substantial" and "objective intolerable risk of serious harm," Warden Johnson could not have known that McGuire faced such a harm. In *Norwood*, this Court held that prison officials could not know that a prison faced a serious risk of harm, despite denying an inmate exercise for more than twelve months (in increments of three, three, four and half, and two months) during a two-year period, when "there was a greater risk of harm from allowing outdoor exercise" as the lockdowns were instituted to "keep inmates safe" from "a genuine emergency." 591 F.3d at 1065, 1068-70. The Court reasoned that '[o]fficials must balance th[e] imperative [to

keep inmates safe] against other obligations that our laws impose, such as providing outdoor exercise." *Id*. at 1069.

The district court ignored that the COVID-19 pandemic was a genuine life and death emergency, the likes of which has never been seen before. Restrictions on yard time were reasonably imposed at HDSP to protect offenders, like McGuire, from COVID-19. If these restrictions had not been instituted, and McGuire had contracted COVID-19, McGuire would most certainly be suing Defendants for the failure. Notwithstanding the district court's contrary insinuations, it "is well established that judges and juries must defer to prison officials' expert judgments." *Norwood*, 591 F.3d at 1066. Warden Johnson therefore could not know that the restrictions placed on outdoor exercise were putting offenders at risk because those restrictions were put in place to protect offenders from a danger far worse than a lack of outdoor exercise, especially given McGuire's access to other recreational opportunities. 3-ER-209-56, ECF No. 84-1 at 15-62.

To the extent McGuire may argue that Warden Johnson knew that McGuire was provided less outdoor exercise, or less tier time, than was scheduled, no evidence in the record supports such a contention. The only evidence relied upon by the district court was Warden Johnson's response to McGuire's grievance. 1-ER-10; ECF No. 55 at 9. In McGuire's grievance, he only alleged being deprived of outdoor

24

exercise for "45-days," and affirmed that yard time had been restored. 2-ER-127-28, 237; ECF Nos. 43-5 at 30, 48 at 40-41. McGuire did not complain about any loss of tier time, or any harm to his health due to the lack of outdoor exercise. 2-ER-127-28, 237; ECF Nos. 43-5 at 30, 48 at 40-41. When responding to McGuire's grievance, Warden Johnson confirmed that McGuire's unit was locked down on "numerous occasions" due to "COVID, Emergency Situations and Incidences," as permitted by HDSP OP 404. 2-ER-131, 237; ECF Nos. 43-5 at 30, 48 at 44. Accordingly, other than this short 45-day period, which was necessary to protect offenders like McGuire from COVID-19, Warden Johnson was not aware that McGuire was not receiving the full amount of time scheduled for outdoor exercise and tier time, within the confines which the dangers of COIVD-19 would permit. Warden Johnson also had no knowledge that any lack of outdoor exercise was causing McGuire any harm because McGuire's grievance did not mention harm, much less provide the required objective medical evidence of harm. McGuire therefore cannot establish that Warden Johnson was subjectively aware of any risk of harm to McGuire due to restrictions on outdoor exercise.

As McGuire failed to establish either the objective or subjective prong required to establish his condition of confinement claim, and both are required, he cannot establish an Eighth Amendment violation. This

25

Court should therefore reverse the district court's judgment to the extent that it denies Warden Johnson's motion for summary judgment, and remand with instructions to grant Warden Johnson's motion in full.

### C. McGuire's Conditions of Confinement During the COVID-19 Pandemic Did *NOT* Violate the Eighth Amendment

Even if McGuire could establish that Warden Johnson took some missteps when responding to the unprecedented COVID-19 pandemic, McGuire's conditions of confinement during the COVID-19 pandemic did not violate the Eighth Amendment. Rather than deliberate indifference, the established facts demonstrate that NDOC and Warden Johnson appropriately responded to the COVID-19 pandemic. In *Fraihat v. U.S. Immigration & Customs Enf't*, 16 F.4th 613, 618-19, 637 (9th Cir. 2021), this Court held that immigration detainees failed to show that immigration officials, when "responding to the evolving and unprecedented COVID-19 pandemic," "acted with 'deliberate indifference' . . . or in 'reckless disregard'' of health risks," when the immigration officials "took steps to address COVID-19," even though the "response to the COVID-19 pandemic may have been imperfect, even at times inadequate." The Court reasoned there "is considerable distance between imperfect implementation of a policy, or even knowledge of the imperfect implementation of a policy, and deliberate indifference in the constitutional sense." *Id*. at 647. This Court

26

concluded that even though immigration officials "might have approached the pandemic more effectively," immigration detainees did not show immigration officials' actions "reflected deliberate indifference or reckless disregard of COVID-19" because courts must give "due consideration for the Executive Branch's preeminent role in managing immigration detention facilities and its greater institutional competence in this area," "[p]articularly in the face of scientific uncertainty about COVID-19." *Id.* at 638-42*; see also Valentine v. Collier*, 978 F.3d 154, 164-65 (5th Cir. 2020) (holding that prison officials did not violate the Eighth Amendment when responding to COVID-19 because they took "affirmative steps . . . to contain the virus, even though "the district court identified lapses in [prison officials'] response to COVID-19" and the "measures [taken] may have been unsuccessful" because "the Eighth Amendment does not mandate perfect implementation," "especially in the face of an unprecedented public health crisis"); *Swain v. Junior*, 961 F.3d 1276, 1288-91 (11th Cir. 2020) (holding prison officials did not violate the Eighth Amendment when responding to COVID-19, even though they "didn't succeed in preventing the virus," when the "district court never found that "defendants knew of any potential lapses in enforcement and deliberately ignored them," but instead found that prison officials "implement[ed] some social-distancing measures, distribut[ed] face

27

masks, screen[ed] inmates and staff, and provid[ed] cleaning and personal hygiene supplies," as prison officials were "faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility").

Here, any restrictions imposed on outdoor exercise were adopted to combat COVID-19, and protect offenders and staff alike. Due to these policies, NDOC had the 8th lowest positive COVID-19 infection rate of offenders in the nation. MJN Exhibit C, at Ex-C-001. These policies successfully prevented McGuire from contracting COVID-19. 2-ER-109; ECF No. 48 at 22. Even if NDOC might have approached the pandemic more effectively and even if the response to the COVID-19 pandemic may have been imperfect, NDOC's response can hardly be described as "deliberate indifference" or a "reckless disregard" for the risks to McGuire's health. The district court erred because it failed to afford Warden Johnson wide latitude in responding to the unprecedented and ever evolving nature of the COVID-19 pandemic, and failed to recognize that NDOC's response effectively protected McGuire from suffering any adverse health effects from COVID-19.

Accordingly, this Court should reverse the district court's judgment to the extent it denied Warden Johnson's motion for summary judgment, and remand with instructions to grant the motion in full.

**D. McGuire Failed to Establish that Any Supposed Shortcomings When Implementing NDOC's COVID-19 Protocols Caused McGuire Harm**

McGuire failed to establish that he was harmed due to the lack of any outdoor exercise. As mandated by *Leer*, McGuire must establish the "requisite causal connection between each individual prison official's actions and the eighth amendment violation." 844 F.2d at 634. The district court erred when denying Warden Johnson's motion for summary judgment because McGuire offered no evidence demonstrating that Warden Johnson's actions caused McGuire harm. *Id.*; *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (holding to prove an Eighth Amendment violation, the offender must establish that Defendants' actions "caused" further harm); *Shapley,* 766 F.2d at 407 (holding that inmate could not establish a "claim of deliberate medical indifference" unless "the denial [of medical care] was harmful").

In *Campbell v. California Dept. of Corr. & Rehab.*, 463 Fed. Appx. 634, 635–36, 2011 WL 6425312, at *1 (9th Cir. 2011), this Court held that "[s]ummary judgment on [a prisoner's] deliberate indifference claim was proper with respect to each defendant" because the prisoner "failed to present sufficient evidence of causation between the alleged violations and any food-borne illness." This Court reached this result because the prisoner failed to meet the "causation requirement" of "both

29

causation-in-fact and proximate causation." *Bearchild v. Cobban*, 947 F.3d 1130, 1150 (9th Cir. 2020).

Similarly, in *Panchev v. Pac. Gas & Elec. Co.*, 825 Fed. Appx. 462, 463, 2020 WL 5511817 (9th Cir. 2020), this Court held the "district court properly granted summary judgment" because the plaintiff, asserting a § 1983 claim, failed to establish that "plaintiff's alleged injuries resulted from his exposure to elevated levels of arsenic or uranium." The Court reasoned that in "a § 1983 action, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury," which requires establishing "specific causation, whether a particular individual suffers from a particular ailment as a result of exposure to a substance." *Id.*

Here, McGuire failed to point to any objective medical evidence in the record establishing that the actions of Warden Johnson were the actual and proximate cause of any harm to McGuire. In *Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir. 1994), the Eighth Circuit held that a prisoner's "bare assertions" could not establish that a prisoner suffered from an ailment when there was no "medical evidence to support' the prisoner's claim that he suffered from this ailment." The court reasoned that the prisoner's "self-diagnosis alone cannot establish that he does, in fact, suffer from [an aliment]" when "the available medical evidence

does not support his self-diagnosis." *Id.*; *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (same).

As explained by the Tenth Circuit in *Felkins v. City of Lakewood*, 774 F.3d 647, 651 (10th Cir. 2014), a plaintiff's "lay evidence" concerning her medical condition "is inadmissible in court and thus cannot be used to oppose summary judgment" when the plaintiff "does not claim to be a medical expert." The court reasoned that "[s]uch lay evidence . . . cannot be 'based on scientific, technical, or other specialized knowledge'," as required by Fed. R. Evid. 701, and therefore is inadmissible for purposes of summary judgment. *Id.*

McGuire provided no objective medical evidence that any lack of outdoor exercise was the actual and proximate cause of any harm to him. *See Cox v. Benedetti*, 114 Fed. Appx. 939, 940, 2004 WL 2915113, at *1 (9th Cir. 2004) (holding that without "medical evidence" inmate could not establish the cause for a "medical condition"); *Walker v. Shansky*, 28 F.3d 666, 672 (7th Cir. 1994) (holding prisoner's "self-serving conclusions about his . . . health are insufficient to withstand the defendants' motion for summary judgment" because there was "no evidence that [the prisoner was] qualified to testify as to his medical condition"). Because McGuire offers no medical evidence establishing that he suffered substantial or serious harm, the district court erred when denying Warden Johnson's motion for summary judgment. *See*

31

*Arpin*, 261 F.3d at 922 (holding that plaintiff failed to establish a constitutional violation when the plaintiff did "not provide any medical records to support her claim"). This Court should therefore reverse the district court, and remand with instructions to grant Defendants' motion in full.

### E. McGuire Failed to Meet His Burden of Establishing a Violation of Clearly Established Law, Beyond Debate, Required to Overcome Qualified Immunity

Neither McGuire, nor the district court, has cited any Supreme Court or circuit authority which squarely governs the facts of this case and would, beyond debate, clearly establish that Warden Johnson violated the Eighth Amendment. In *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), this Court held that resolving dispositive motions "based on qualified immunity" requires conducting an "individualized analysis . . . , examining each of the . . . elements of the alleged" cause of action, when determining whether the law was clearly established. McGuire, however, cannot point to any binding precedent establishing that he meets even a single element of his Eighth Amendment claim.

The district court almost entirely and wrongly relied upon *Toussaint v. Yockey*, 722 F.2d 1490 (9th Cir. 1984) to establish a

constitutional violation.[6]  1-ER-9, ECF 55 at 8.   This Court, in *Norbert*, 10 F.4th at 930, determined that this Court's "analysis" in *Toussaint v. Yockey*, 722 F.2d 1490 (9th Cir. 1984) "demonstrated that we were not imposing a per se requirement that exercise necessarily take place outside."  *Norbert* continued that this Court in *Toussaint* "merely held that, *given the circumstances of this case*," specifically that "many 'were confined to their cells for as much as 23 ½ hours a day,'" then "'the denial of outdoor exercise was probably unconstitutional'" for preliminary injunction purposes.   *Norbert*, 10 F.4th at 930, quoting *Toussaint*, 722 F.2d 1492-93.   *Norbert*, concluded that *Toussaint*,

---

[6] Without any analysis, whatsoever, the district court also appears to have relied on *Spain v. Procunier*, 600 F.2d 189 (9th Cir. 1979), *LeMaire v. Maass*, 12 F.3d 1444 (9th Cir. 1993) and *Allen v. Sakai*, 48 F.3d 1082, 1087-88 & n. 1, 5 (9th Cir. 1994), to establish a violation of clearly established law. 1-ER-10, ECF No. 55 at 9. This Court in *Norbert*, 10 F.4th at 929-34, distinguished each of these cases based on their own unique circumstances and determined that none of these cases held that the deprivation of outdoor exercise was a per se violation of the Eighth Amendment.  In fact, the Court in *Norbert* noted *LeMaire* held the inmate, like McGuire, "had not established an Eighth Amendment violation," even though, unlike McGuire, the inmate "'had been deprived of outside exercise for most of a five-year period of incarceration.'"  *Norbert*, 10 F.4th at 931 quoting *LeMaire*, 12 F.3d at 1457.   None of these cases involved restrictions imposed to protect offenders, during "a genuine emergency" from a "danger far worse than a lack of outdoor exercise," such as the COVID-19 global pandemic. *Norbert*, 10 F.4th at 923, 929-34; *Norwood*, 591 F.3d at 1065, 1068-70. Accordingly, none of these cases clearly establish, beyond debate, that Warden Johnson violated the Eighth Amendment.

however, recognized "that "indoor recreation opportunities could be constitutionally sufficient in some circumstances." *Norbert*, 10 F.4th at 930, citing *Toussaint*, 722 F.2d at 1493.

McGuire, however, was not locked up 23½ hours a day in his cell, but was able to exercise in his cell, and admittedly had one (1) hour of recreation on his tier each day, and up to two hours of outdoor exercise each week, which outdoor exercise was completely absent in *Toussaint*. *Toussaint* did not involve the "circumstances" of a genuine emergency such as the unprecedented global COVID-19 pandemic, which required NDOC to restrict McGuire's yard time to prevent the spread of COVID-19. Accordingly, *Toussaint* could not "have made clear" to Warden Johnson that restricting outdoor exercise in such emergency circumstances violated the Eighth Amendment, "beyond debate." *Carley*, 103 F.4th at 660-61.

No court has held that a prison official violates the Eighth Amendment by restricting yard time to prevent the spread of a global pandemic. To the contrary, this Court declared: "[W]e have never held that all deprivations of outdoor exercise are per se unconstitutional." *Norbert*, 10 F.4th at 929. This Court has refused to "impose[]a rigid requirement of outdoor exercise," especially when restrictions are imposed to those restrictions were put in place to protect offenders, during "a genuine emergency" from a "danger far worse than a lack of

34

outdoor exercise." *Id*. at 923, 929-34; *Norwood*, 591 F.3d at 1065, 1068-70.

McGuire therefore cannot establish a constitutional violation, much less meet his burden of showing a violation that was clearly established, beyond debate. *See Carley*, 103 F.4th at 659-60 (holding the "burden of proof rests" with the [inmate] to prove a both that "the officials conduct violated a constitutional right," and that the "violation was clearly established at the time of the violation"). Accordingly, Warden Johnson is shielded by qualified immunity, and the district court erred when denying his motion for summary judgment. This Court should therefore reverse the district court's judgment, because Warden Johnson is shielded by qualified immunity.

///

///

///

///

///

///

///

///

///

///

35

## VIII. CONCLUSION

For the reasons set forth above, this Court should reverse the district court's judgment to the extent it denies Defendant Warden Johnson's motion for summary judgment, and remand with instruction to the district court to grant Warden Johnson's motion for summary judgment in all respects.

Respectfully submitted August 15, 2025,

AARON D. FORD
Attorney General

By: */s/ Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General

*Attorneys for the Defendants-Appellants*

## STATEMENT OF RELATED CASES

The undersigned attorney asserts that I am unaware of any related cases pending in the Ninth Circuit Court of Appeals.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1, the attached brief is proportionately spaced, has a typeface of 14 points or more and contains 7246 words.

Respectfully submitted August 15, 2025.

AARON D. FORD
Attorney General

By: _/s/ Chris Davis_____
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General
*Attorneys for Defendants-Appellants*

37

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT-APPELLANT'S OPENING BRIEF** and **DEFENDANT–APPELLANT'S EXCERPTS OF RECORD** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate electronic filing system on August 15, 2025.

Participants in the case who are registered users will be served by the appellate electronic filing system as follows:

Samuel Weiss, Esq.
RIGHTS BEHIND BARS
416 Florida Avenue NW, #26152
Washington, D.C. 20001-05069
sam@rightsbehindbars.org

*Attorneys for Plaintiff-Appellee*

/s/ Kimalee Goldstein
An employee of the office
of the Nevada Attorney General

38