25-1457

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ROBERT MCGUIRE,
Plaintiff-Appellee,

v.

CALVIN JOHNSON,
Defendant-Appellant

and

NEVADA DEPARTMENT OF CORRECTIONS and
WILLIAM GITTERE,
Defendants,

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 3:23-cv-00165-ART-CLB

_____

**DEFENDANT-APPELLANT'S
EXCERPTS OF RECORD
VOLUME I
(ER001-ER026)**

_____

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendant-Appellant Calvin Johnson*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT MCGUIRE, | Case No. 3:23-cv-00165-ART-CLB |
| Plaintiff, | ORDER |
| v. | (ECF Nos. 33, 43, 50, 51) |
| NEVADA DEPARTMENT OF CORRECTIONS, *et al.*, | |
| Defendants. | |

Plaintiff McGuire sues NDOC officials William Gittere and Calvin Johnson for depriving him of outdoor exercise at Ely State Prison and High Desert State Prison in violation of the Eighth Amendment's bar on cruel and unusual punishment and the Fourteenth Amendment's procedural due process protections. Both parties have moved for summary judgment. Magistrate Judge Baldwin issued a Report and Recommendation denying Plaintiff's motion and granting Defendants'. The Court adopts the Report and Recommendation in part, grants Defendants' motion in part, and denies Plaintiff's motion.

## I. FACTUAL HISTORY

Plaintiff Robert McGuire argues that Ely State Prison (ESP) Warden William Gittere and High Desert State Prison (HDSP) Warden Calvin Johnson deprived him of outdoor exercise between August 2020 and June 2022. (ECF No. 1-1; ECF No. 33.) In August 2020, ESP officials denied McGuire's unit outdoor recreation for eighteen days. (*See* ECF No. 33 at 2.) He and other inmates were then transferred to HDSP, where they were entirely deprived of outdoor recreation between August 18, 2020, to October 23, 2020. (*Id.* at 3.) McGuire testified that upon arriving at HDSP, "we had no air conditioning for the 1st month. This made in-cell work-out (exercise) impossible." (ECF No. 33 at 9; ECF No. 51 at 16.) From October 23, 2020, to June 9, 2022, HDSP officials allowed McGuire only one or

two hours of outdoor recreation per week. (ECF No. 33 at 4; ECF No. 51 at 15.) McGuire testified that during this period, he was sometimes denied outdoor recreation time for "several weeks" at a time. (ECF No. 48 at 3.) McGuire also testified that as a close custody inmate, during this period he received, at most, one hour of tier time per day. (*Id.* at 17.)

McGuire testified that both ESP and HDSP had outdoor recreational cages made to provide inmates outdoor recreation time during lockdowns. (ECF No. 33 at 2, 3.) Additionally, McGuire provides an interrogatory from Defendant Johnson which states that the recreational cages at HDSP were "built around 2016 . . . to give offenders recreational time if a substantial lockdown were to occur." (ECF No. 48 at 33–34.)

Defendants argue that McGuire received sufficient recreational time, including outdoor exercise. Associate Warden of ESP, David Drummond, stated by declaration that "McGuire was permitted tier and yard time once a day, every day of the week, for roughly an hour and forty-five minutes." (ECF No. 43-3.) Drummond stated that during tier time, "McGuire had the opportunity to . . . enjoy recreation yard time." (*Id.*) Warden of HDSP, Jeremy Bean, stated by declaration that "McGuire was permitted out-of-cell time (tier time) up to one hour per day, seven days a week, as possible." (ECF No. 43-4.) Bean also stated that "McGuire's unit was also scheduled to attend outdoor yard time at least two hours a week." (*Id.*)

McGuire made and appealed administrative grievances, which were read by Defendants, about not being provided access to the yard for extended periods. (*See* ECF No. 48 at 40–44.) In their grievance responses, ESP and HDSP administrators told McGuire that outdoor recreation time was being restricted because of COVID-19, emergencies, and other incidents. (*Id.* at 44.) McGuire sued in this Court, arguing that officials' refusal to give him outdoor recreation constituted cruel and unusual punishment and that officials deprived him of

1   outdoor recreation time without due process of law. (*See* ECF No. 3.)

2   **II. PROCEDURAL HISTORY**

3   After screening, the Court permitted an Eighth Amendment deliberate
4   indifference claim against Defendants Gittere and Johnson and a Fourteenth
5   Amendment procedural due process claim against the same Defendants. McGuire
6   conducted discovery and moved for summary judgment. (ECF No. 33.)
7   Defendants also moved for summary judgment. (ECF No. 43.) Magistrate Judge
8   Baldwin issued a Report and Recommendation (R&R) that Defendants' motion be
9   granted and McGuire's motion be denied. (ECF No. 50.) McGuire timely objected.
10  (ECF No. 51.)

11  **III.     LEGAL STANDARD**

12  **A. Objections to Report and Recommendation**

13  The Court conducts a *de novo* review of the objected-to findings and
14  conclusions of a Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); LR IB 3-
15  2(b). The Court "may accept, reject or modify, in whole or in part, the magistrate
16  judge's findings or recommendations." LR IB 3-2(b). A district judge may exercise
17  discretion in reviewing findings and recommendations that were not objected to.
18  *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003)

19  **B. Summary Judgment**

20  Summary judgment is appropriate when the record shows "no genuine
21  issue as to any material fact and that the movant is entitled to judgment as a
22  matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is
23  "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder
24  could find for the nonmoving party, and a dispute is "material" if it could affect
25  the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*,
26  477 U.S. 242, 248-49 (1986). The court must view the facts in the light most
27  favorable to the non-moving party and give it the benefit of all reasonable
28  inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith*

1  *Radio Corp.*, 475 U.S. 574, 587 (1986).

2      The party seeking summary judgment bears the burden of informing the

3  court of the basis for its motion and identifying parts of the record that show the

4  absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The burden

5  then shifts to the non-moving party to "set forth specific facts showing that there

6  is a genuine issue for trial." *Anderson*, 477 U.S. at 256. When deciding cross-

7  motions for summary judgment, the Court considers each party's evidence

8  without considering which motion provided the evidence. *Las Vegas Sands, LLC*

9  *v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

10      "Courts should construe liberally motion papers and pleadings filed by *pro*

11  *se* inmates and should avoid applying summary judgment rules strictly." *Soto v.*

12  *Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (citing *Thomas v. Ponder*, 611 F.3d

13  1144, 1150 (9th Cir. 2010)).

14  **IV. ANALYSIS**

15      McGuire, Gittere, and Johnson all seek summary judgment on McGuire's

16  Eighth and Fourteen Amendment claims for depriving McGuire of outdoor

17  recreation between August 2020 and June 2022.

18      The Court denies summary judgment with respect to McGuire's deliberate

19  indifference claim against Defendant Johnson but grants summary judgment

20  with respect to his deliberate indifference claim against Defendant Gittere and

21  his procedural due process claim against both Defendants, which is not

22  cognizable in this Court.

23  **A. Eighth Amendment Exercise Claim**

24      "[E]xercise is one of the basic human necessities protected by the Eighth

25  Amendment." *Norbert v. City & County of San Francisco*, 10 F.4th 918, 928–29

26  (9th Cir. 2021) (citation and internal quotation marks omitted). "Deprivation of

27  outdoor exercise violates the Eighth Amendment rights of inmates confined to

28  continuous and long-term segregation." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th

1    Cir. 1996) (citing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)), *amended*
2    *by* 135 F.3d 1318 (9th Cir. 1998); *see also Thomas v. Ponder*, 611 F.3d 1144,
3    1151–52 (9th Cir. 2010); *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir.
4    2010); *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005); *Lopez v. Smith*,
5    203 F.3d 1122, 1133 (9th Cir. 2000) (en banc); *Allen v. Sakai*, 48 F.3d 1082, 1087
6    (9th Cir. 1995); *Allen v. City of Honolulu*, 39 F.3d 936, 938–39 (9th Cir. 1994);
7    *LeMaire v. Maass*, 12 F.3d 1444, 1457–58 (9th Cir. 1993); *Toussaint v. Yockey*,
8    722 F.2d 1490, 1492–93 (9th Cir. 1984).

9        Challenges to restrictions on outdoor exercise require an objective and
10   subjective showing like other challenges to conditions of confinement under the
11   Eighth Amendment. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Farmer*
12   *v. Brennan*, 511 U.S. 825, 832 (1994).

13       The objective showing may be met by evidence showing a prolonged
14   deprivation of outdoor exercise to inmates confined to continuous and long-term
15   segregation. *Keenan*, 83 F.3d at 1089; *LeMaire*, 12 F.3d at 1458. Four years
16   without an opportunity to go outside except for "occasional court appearances,
17   attorney interviews, and hospital appointments" meets the objective showing.
18   *Spain*, 600 F.2d at 192, 200. One year of being confined to a cell for twenty-three-
19   and-a-half hours a day without outdoor exercise also meets the showing.
20   *Toussaint*, 722 F.2d at 1492-93. On the other hand, "a temporary denial of
21   outdoor exercise with no medical effects is not a substantial deprivation," *May v.*
22   *Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997).

23       For the subjective showing of the Eighth Amendment analysis, prisoners
24   must establish that officials were deliberately indifferent to unconstitutional
25   conditions of confinement. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S.
26   294, 303 (1991). To demonstrate that deliberate indifference to a serious threat
27   to an inmate's health, the prisoner must show that the "the official [knew] of and
28   disregard[ed] an excessive risk to inmate . . . safety; [and] the official must both

1    be aware of facts from which the inference could be drawn that a substantial risk

2    of serious harm exists, and [the official] must also draw the inference." *Farmer*,

3    511 U.S. at 846.

4    **1. McGuire's 8th Amendment Claim Against Gittere**

5    Defendant Gittere seeks summary judgment on McGuire's Eighth

6    Amendment claim for failing to make the required objective showing of deliberate

7    indifference. McGuire seeks summary judgment for establishing that Gittere

8    failed to provide outdoor exercise between August 1 and August 18, 2020. (*See*

9    ECF No. 33 at 2.)

10   Without aggravating facts, eighteen days without outdoor recreation is not

11   long enough to establish an Eighth Amendment claim. *See May*, 109 F.3d at 565

12   (finding twenty-one days without outdoor recreation fails to establish an Eighth

13   Amendment claim). Accordingly, McGuire cannot establish a genuine issue of fact

14   for this claim against Defendant Gittere.

15   McGuire also alleges that Defendant Gittere should be held liable for these

16   restrictions because he became the head of NDOC in 2022, at the end of the

17   period at issue in this suit. (ECF No. 33 at 2.) While Defendant Gittere did

18   eventually respond to one of Plaintiff's grievances in 2023, (ECF No. 48 at 46),

19   McGuire has not provided enough facts to show that Gittere was responsible for

20   Plaintiff not receiving outdoor recreation while at HDSP. *See Lemire v. California*

21   *Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (supervisor must be

22   "personally involved in the constitutional deprivation").

23   Accordingly, the Court adopts the R&R's recommendation to grant

24   summary judgment to Defendant Gittere.

25   **2. McGuire's 8th Amendment Claim Against Johnson**

26   Defendant Johnson also seeks summary judgment on McGuire's Eighth

27   Amendment claim for failing to provide McGuire opportunities to exercise at

28   HDSP. McGuire also seeks summary judgment on this claim. Because disputed

1    material facts exist, summary judgment is not appropriate for either party.

2    Summary judgment in favor of McGuire is inappropriate because

3    Defendants have put forward sworn testimony that McGuire received out-of-cell

4    time every day and outdoor yard time for at least two hours a week during the

5    period in question. (ECF No. 43-4.) Viewed in the light most favorable to

6    Defendant Johnson, this would allow a reasonable juror to find that McGuire

7    received sufficient outdoor recreation.

8    Summary judgment in favor of Defendant Johnson is also inappropriate.

9    McGuire put forward sworn testimony that he received substantially less outdoor

10   recreation time than Defendants attest, which creates a material dispute of fact

11   for the objective prong of his Eighth Amendment claim. McGuire has also

12   provided enough facts to dispute for the subjective prong of his claim.

13   ### i.    Objective Prong

14   Prolonged deprivation of outdoor exercise meets the objective showing of

15   an Eighth Amendment deliberate indifference claim. *Keenan*, 83 F.3d at 1089.

16   McGuire provided evidence through testimony and grievances that between

17   August and October 2020, officials at HDSP did not provide him any outdoor

18   recreation. (ECF No. 48 at 40.) He also provided evidence that between October

19   2020 and June 2022, he went several weeks without being permitted outdoor

20   exercise, and at other times received only one or, at most, two hours per week of

21   outdoor exercise. (*Id.* at 3.) These facts suffice to show a genuine issue of fact on

22   the objective prong.

23   Defendants argue that *Norbert v. City and County of San Francisco*

24   precludes McGuire from showing objective harm if he is able "to exercise inside

25   his cell or in jail common areas." (ECF No. 43 at 8 (quoting *Norbert*, 10 F.4th at

26   932).) *Norbert* held that "the constitutionality of conditions for inmate exercise

27   must be evaluated based on the full extent of the available recreational

28   opportunities." *Norbert*, 10 F.4th at 930. In that case, administrative segregation

1    inmates received "at least one hour of recreation time seven days a week" between

2    "the day room and gym." *Id.* at 934. McGuire's circumstances more closely align

3    to those in *Toussaint*, where inmates were confined to their cells for twenty-three-

4    and-a-half hours a day for over one year. *Toussaint*, 722 F.2d at 1492-93.

5    McGuire provides testimony that between August 2020 to June 2022, he was in

6    his cell for at least twenty-three hours a day (ECF No. 33 at 9; ECF No. 48 at 21),

7    that he was not permitted to use the gym or do exercise while on tier-time at

8    HDSP (ECF No. 53 at 2), and that heat and lack of air-conditioning made his cell

9    unusable for exercise for at least one summer (ECF No. 33 at 9). *Norbert* does not

10   preclude McGuire's claim.

11        **ii.    Subjective Prong**

12        Defendants next argue that McGuire cannot show that Defendant Johnson

13   was deliberately indifferent because restrictions on outdoor recreation were

14   justified. Defendants claim that because of "COVID-19, incidences, or other

15   emergency situations," restrictions on outdoor exercise at HDSP were reasonable.

16   (ECF No. 43 at 10.) While prison officials may restrict outdoor exercise because

17   of weather, unusual circumstances, or disciplinary needs, "[t]he cost or

18   inconvenience of providing adequate [exercise] facilities is not a defense to the

19   imposition of a cruel punishment." *Spain*, 600 F.2d at 199–200. Additionally, in

20   cases where a genuine emergency justifies restricting outdoor recreation,

21   Defendants must provide evidence of the circumstances that give rise to the

22   emergency. *See Hayward v. Procunier*, 629 F.2d 599, 603 (9th Cir. 1980) (outdoor

23   exercise restricted after two murders on the yard and permitted "within a month

24   after the lockdown began"); *Norwood v. Vance*, 591 F.3d 1062, 1070 (9th Cir.

25   2010) (lockdown justified due to detailed record showing that a "great deal of

26   violence took place during outdoor exercise").

27        McGuire responds with evidence of alternatives to open yard that would

28   have avoided risks like COVID transmission or violence. According to Defendant

1   Johnson, HDSP has had outdoor "recreational cages" since 2016 that "give
2   offenders recreational time if a substantial lockdown were to occur." (ECF No. 48
3   at 33–34, 35.) McGuire testified that he was not provided access to these cages
4   between August 2020 and June 2022. (*See* ECF Nos. 33, 48.) Defendants have
5   not provided specific evidence of the emergencies that prevented them from
6   providing inmates like McGuire access to outdoor recreation generally or the
7   cages specifically. (*See* ECF No. 43; ECF No. 48 at 34.) This is enough to create a
8   genuine dispute of material fact regarding Defendants' deliberate indifference.

9        Defendants also argue that McGuire has failed to show that Johnson was
10  "aware of facts from which the inference could be drawn that a substantial risk
11  of serious harm exists," and that Johnson also drew that inference. *Farmer*, 511
12  U.S. at 846. McGuire provided evidence of a grievance filed in October 2020 and
13  appealed which showed that he had gone without outdoor recreation and "not
14  even access to the segregation cages." (ECF No. 48 at 40.) Defendant Johnson
15  denied and responded to the first-level grievance in July 2021. (ECF No. 43-5 at
16  30.) This is enough to satisfy the subjective prong.

17       ### iii.   Qualified Immunity

18       Defendants also seek summary judgment under the qualified immunity
19  doctrine. Qualified immunity does not apply when "the evidence viewed in the
20  light most favorable to the plaintiff is sufficient to show a violation of a
21  constitutional right" and when "that right was clearly established at the time of
22  the violation." *Sandoval*, 985 F.3d at 671. McGuire provided sufficient facts to
23  find a constitutional violation. *See supra* IV.A.2. In 2020, when McGuire's claim
24  began, Ninth Circuit case law had clearly established that deprivation of outdoor
25  exercise for prolonged periods of time constituted an objectively serious
26  deprivation under the Eighth Amendment. *See Spain,* 600 F.2d 189 at 199;
27  *LeMaire,* 12 F.3d at 1457; *Allen,* 40 F.3d at 1001. Accordingly, Defendant
28  Johnson is not entitled to qualified immunity on this claim.

**B. Deprivation of Exercise as Procedural Due Process Violation**

Both parties seek summary judgment on McGuire's claim that officials provided insufficient process when depriving him of outdoor recreation time. Defendants understand McGuire's claim to be about insufficient process in being assigned to a housing classification or disciplinary segregation. (ECF No. 43 at 13.) The R&R correctly found that McGuire received adequate process in his housing assignment and placements in administrative segregation, but because it found that McGuire was not deprived of outdoor recreation, it did not address the rest of McGuire's argument. (ECF No. 50 at 12–13.) McGuire objected, arguing that he did not receive adequate process when Defendants deprived him of outdoor recreation time. (ECF No. 48 at 3.)

An inmate may not bring a procedural due process claim arising out of an intentional, unauthorized deprivation of liberty by prison officials if a meaningful post-deprivation remedy is available in state court. *Zinermon v. Burch*, 494 U.S. 113, 131–32 (1990). In situations where prison employees pursue "random, unauthorized" conduct, like destroying an inmate's legal papers, *see Hudson v. Palmer*, there is no procedural due process claim if a post-deprivation remedy exists in state court. 468 U.S. 517, 534–35; *see also Whitley v. Albers*, 475 U.S. 312, 326 (1986) (being shot during prison riot does not give rise to procedural due process violation).

McGuire claims that he was denied five hours per week of outdoor recreation time mentioned in NRS 209.369(5)(b)(5) for pretextual reasons like emergencies, COVID, and security. (ECF No. 48 at 9, 12). This is the sort of unauthorized conduct that employees could use "despite any . . . predeprivation safeguards," like the hearing McGuire requests. *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1226 (9th Cir. 2021).

McGuire points to *Bass v. Perrin* to support his procedural due process claim, but *Bass* is about an *authorized* deprivation of liberty. 170 F.3d 1312,

1318 (11th Cir. 1999). In *Bass*, inmates challenged the "Yard Suspension List" (YSL), an official program developed by policymakers to deprive inmates of outdoor recreation time. *Id.* Viewed in the light most favorable to McGuire, the evidence here shows officials depriving McGuire of outdoor recreation time on an *ad hoc* basis, not under an NDOC policy or disciplinary procedure.

Rather than seek additional process from this Court, McGuire must seek or show the absence of a post-deprivation remedy in state court, which would require him to sue the relevant officials or NDOC under state tort law or the Nevada Constitution. *Miranda*, 15 F.4th at 1227–28; *see e.g.*, *Mack v. Williams*, 522 P.3d 434, 449 (2022) (describing self-executing damages remedies against NDOC under the Nevada Constitution).

Accordingly, the Court adopts the R&R's recommendation to grant summary judgment to Defendants on McGuire's procedural due process claims.

## IV.   CONCLUSION

It is ordered that Magistrate Judge Baldwin's Report and Recommendation (ECF No. 50) is adopted in part and denied in part.

It is further ordered that Plaintiff's objection is granted in part and denied in part (ECF No. 51).

It is further ordered that Plaintiff's motion for summary judgment (ECF No. 33) is denied.

It is further ordered that Defendants' order for summary judgment (ECF No. 43) is granted in part and denied in part. Plaintiff's Eighth Amendment claim against Defendant Johnson may proceed, and the Court orders summary judgment on all other claims in favor of Defendants.

DATED THIS 21st day of February, 2025.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

1    **UNITED STATES DISTRICT COURT**

2    **DISTRICT OF NEVADA**

3    * * *

4    ROBERT MCGUIRE,                                    Case No. 3:23-CV-00165-ART-CLB

5                              Plaintiff,        **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]

6          v.                                          [ECF Nos. 33, 43]

7    NEVADA DEPARTMENT OF
     CORRECTIONS, *et al*.,

8                              Defendants.

9

10          This case involves a civil rights action filed by Plaintiff Robert McGuire ("McGuire")

11   against Defendants William Gittere ("Gittere") and Calvin Johnson ("Johnson")

12   (collectively referred to as "Defendants"). Currently pending before the Court is McGuire's

13   motion for summary judgment. (ECF Nos. 31-34.)[2] Defendants responded, (ECF No. 45),

14   and McGuire replied. (ECF No. 47.) Also pending before the Court is Defendants' motion

15   for summary judgment. (ECF No. 43.) McGuire responded, (ECF No. 48), and Defendants

16   replied. (ECF No. 49.) For the reasons stated below, the Court recommends that

17   McGuire's motion for summary judgment, (ECF No. 33), be denied, and Defendants'

18   motion for summary judgment, (ECF No. 43), be granted.

19   **I.      BACKGROUND**

20          **A.      Procedural History**

21          McGuire is an inmate in the custody of the Nevada Department of Corrections

22   ("NDOC"). On April 18, 2023, McGuire filed a civil rights complaint under 42 U.S.C. §

23   1983 for events that occurred while he was incarcerated at the Ely State Prison ("ESP")

24

25   _____

26   [1]      This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

27

28   [2]      ECF No. 33 is the motion for summary judgment and ECF Nos. 31, 32, and 34 consist of "supplements" to the motion for summary judgment.

and the High Desert State Prison ("HDSP"). (ECF No. 1-1.) On September 21, 2023, the District Court screened McGuire's complaint pursuant to 28 U.S.C. § 1915A(a). (ECF No. 3.) The Court allowed McGuire to proceed on the following claims: (1) an Eighth Amendment conditions of confinement claim related to alleged deprivation of outdoor recreation time and/or exercise against Defendants; and (2) a Fourteenth Amendment due process deprivation claim related to the alleged deprivation of outdoor recreation time and/or exercise against Defendants. (*Id.* at 10.) Claims alleging violations of Senate Bill 187 and Fourteenth Amendment due process – administrative grievance claim were dismissed. (*Id.*)

McGuire's complaint alleges that beginning in August 2020, McGuire was incarcerated at ESP and was denied outdoor recreation time. (ECF No. 4 at 2.) McGuire alleges he was locked in his cell for 24 hours a day. (*Id.*) McGuire was not permitted to exercise on the tier at ESP or go to the indoor gym. (*Id.* at 6.)

On August 18, 2020, McGuire and his unit were transferred to HDSP. (*Id.*) At HDSP, McGuire was again deprived of outdoor recreation time and was locked in his cell for 24 hours a day in solitary confinement. (*Id.* at 2.) He asserts that because HDSP has nine cages for each unit, inmates could have been provided outdoor recreation time while still complying with COVID-19 protocols. (*Id.*) McGuire was denied outdoor recreation time for three months. (*Id.* at 4.) From December 2020 to June 1, 2022, McGuire received one hour per week of out-of-cell and/or outdoor recreation time. (*Id.* at 5.) He alleges that he was not in a quarantine and/or lockdown unit. (*Id.* at 7.) Finally, McGuire alleges that Defendants did not provide hearings regarding the deprivation of recreation time and did not provide administrative remedies for two years. (*Id.* at 3.)

McGuire and Defendants have now each separately moved for summary judgment. (*See* ECF Nos. 33, 43.) McGuire argues he is entitled to summary judgment because he was not provided five hours of weekly outdoor recreation time and he was also not afforded a due process hearing before having his access to outdoor recreation restricted. (ECF No. 33.)

1    Defendants argue McGuire cannot establish a constitutional violation as to his

2    Fourteenth Amendment claim as his custody level did not change during the period in

3    question and he nonetheless had several custody hearings during this timeframe. (ECF

4    No. 43.) Additionally, as to the Eighth Amendment claim, Defendants argue McGuire

5    cannot prevail on this claim as he had "plenty of out-of-cell opportunities, which were

6    admittedly semi-hindered due to having to go on lockdown for emergency situations such

7    as COVID-19, incidences, inmate disturbances, inmate deaths, and medical

8    quarantines." (*Id.*) Finally, Defendants argue they are entitled to qualified immunity. (*Id.*)

9    **B.    Factual Summary**

10    The following facts are undisputed: At the beginning of August 2020, McGuire was

11    housed at ESP in Unit 5, Pod A. (ECF No. 43-1 at 3.) On August 18, 2020, McGuire was

12    transferred from ESP to HDSP due to the de-population of ESP. (*Id.* at 4; ECF No. 43-2

13    at 8.) When McGuire arrived at HDSP, he received a due process hearing and was

14    housed in Unit 3, Pod A. (*Id.*) According to McGuire's case notes, he was to remain in

15    administrative segregation ("Ad-Seg") pending a full classification hearing for proper

16    placement. (ECF No. 43-2 at 8.)  On September 23, 2020, McGuire received an Ad-Seg

17    review and was to remain in Ad-Seg pending Warden approval to be placed in general

18    population. (*Id.* at 9.) On September 29, 2020, McGuire received another classification

19    review. (*Id.*) Due to a history of institutional violence and a high number of points, McGuire

20    was housed in a special management unit ("SMU"), which is a close custody unit. (*Id.*;

21    ECF No. 43-4 at 3.) On November 2, 2020, McGuire had a periodic review of his custody

22    status, and was to remain in SMU, close custody. (ECF No. 43-2 at 9.)

23    On March 30, 2021, McGuire was placed back into Ad-Seg from SMU due to

24    pending notice of charges and was advised he would remain in that unit pending the

25    outcome of the charges. (*Id.* at 9-10.) April 29, 2021, McGuire was moved back to SMU

26    after being found not guilty of the charges. (*Id.* at 10.) On June 10, 2022, McGuire returned

27    to Ad-Seg due to institutional restructuring, where he remained until he was transferred

28    back to ESP on September 27, 2022. (*Id.* at 11.) McGuire continued to receive periodic

1   reviews of his custody status throughout this entire timeframe. (*Id.* at 10-12.)

2       While housed at ESP, McGuire was permitted tier and yard time once a day, every

3   day of the week, for roughly an hour and forty-five minutes. (ECF No. 43-6; ECF No. 43-

4   3 at 3.) Yard time occurred within the unit's recreation yard. (ECF No. 43-7; ECF No. 43-

5   3 at 3.) During McGuire's tier and yard time, McGuire had the opportunity to shower, use

6   the phone, enjoy recreation yard time, interact with other inmates, and participate in

7   educational courses and institutional television via correspondence. (ECF No. 43-7 at 10-

8   11; ECF No. 43-3 at 3.)

9       While housed at HDSP, McGuire was permitted out-of-cell time up to one hour per

10  day, seven days a week, as possible. (ECF No. 43-8; ECF No. 43-4 at 3.) While on tier

11  time, McGuire had the opportunity to shower, use the phone, interact with other inmates,

12  and participate in educational courses as eligible. (ECF No. 43-9; ECF No. 43-4 at 3.)

13  Furthermore, McGuire was scheduled to attend outdoor yard time at least two hours a

14  week. (ECF No. 43-11; ECF No. 43-4 at 3.)

15      On October 23, 2020, McGuire submitted grievance number 2006-31-14341,

16  regarding his allegations that he was not being permitted access to the yard for forty-five

17  days. (ECF No. 43-5 at 30.) In a response, Defendant Johnson responded to McGuire's

18  grievance, informing him that on numerous occasions, McGuire's unit was forced to be

19  lockdown due to COVID-19, incidences, or other emergency situations. (*Id.*)

20  **II.   LEGAL STANDARD**

21      "The court shall grant summary judgment if the movant shows that there is no

22  genuine dispute as to any material fact and the movant is entitled to judgment as a matter

23  of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

24  substantive law applicable to the claim or claims determines which facts are material.

25  *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477

26  U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of

27  the suit can preclude summary judgment, and factual disputes that are irrelevant are not

28  material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine"

1   only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at

2   248.

3          The parties subject to a motion for summary judgment must: (1) cite facts from the

4   record, including but not limited to depositions, documents, and declarations, and then

5   (2) "show[] that the materials cited do not establish the absence or presence of a genuine

6   dispute, or that an adverse party cannot produce admissible evidence to support the fact."

7   Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be

8   authenticated, and if only personal knowledge authenticates a document (i.e., even a

9   review of the contents of the document would not prove that it is authentic), an affidavit

10  attesting to its authenticity must be attached to the submitted document. *Las Vegas*

11  *Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements,

12  speculative opinions, pleading allegations, or other assertions uncorroborated by facts

13  are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v.*

14  *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*,

15  935 F.3d 852, 856 (9th Cir. 2019).

16         The moving party bears the initial burden of demonstrating an absence of a

17  genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the

18  burden of proof on an issue at trial, the movant must affirmatively demonstrate that no

19  reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d

20  at 984. However, if the moving party does not bear the burden of proof at trial, the moving

21  party may meet their initial burden by demonstrating either: (1) there is an absence of

22  evidence to support an essential element of the nonmoving party's claim or claims; or (2)

23  submitting admissible evidence that establishes the record forecloses the possibility of a

24  reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco*

25  *Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz*

26  *Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any

27  inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v.*

28  *Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its

burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

///

///

## III.    DISCUSSION

### A.    Eighth Amendment – Conditions of Confinement

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. MO Chapman*, 452 U.S. 337, 347 (1981). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The Ninth Circuit has also "recognized that exercise is one of the basic human necessities protected by the Eighth Amendment." *Norbert v. City & County of San Francisco*, 10 F.4th 918, 928–29 (9th Cir. 2021) (citation and internal quotation marks omitted). "Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)), amended by 135 F.3d 1318 (9th Cir. 1998).

The prolonged deprivation of outdoor exercise to inmates confined to continuous and long-term segregation meets the objective prong of the Eighth Amendment. *Keenan*, 83 F.3d at 1089; *LeMaire v. Maass*, 12 F.3d 1444, 1458 (9th Cir. 1993) ("the long-term deprivation of outside exercise for inmates is unconstitutional"). By contrast, "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (the denial of exercise for 21 days was not a violation of the Eighth Amendment). In *Spain v. Procunier*, the Ninth Circuit held that confinement of prisoners who were assigned to the "adjustment center" "for a period of [four] years without opportunity to go outside except for occasional court appearances, attorney interviews, and hospital appointments" was cruel and unusual punishment. *Spain*, 600 F.2d at 192, 200. In *Toussaint v. Yockey*, the Ninth Circuit upheld a preliminary injunction requiring the state to provide "outdoor exercise" where prisoners, who had been held in administrative segregation for over a year, were "confined to their cells for as much as 23 ½ hours a day." *Toussaint*, 722 F.2d 1490, 1492-93 (9th Cir. 1984). Prison officials

1   may restrict outdoor exercise based on weather, unusual circumstances, or disciplinary

2   needs. *See Spain*, 600 F.2d at 199. However, "[t]he cost or inconvenience of providing

3   adequate [exercise] facilities is not a defense to the imposition of a cruel punishment." *Id.*

4   at 200.

5       To establish a violation of these duties, the inmate must establish that prison

6   officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*,

7   511 U.S. at 834. Under the deliberate indifference standard, a violation of the Eighth

8   Amendment is only found when an objective and subjective component are met. *See id.*

9   at 834.

10      "[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he

11  was exposed to a substantial risk of some range of serious harms; the harm he actually

12  suffered need not have been the most likely result among this range of outcomes." *Id.* at

13  1076 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It

14  does not matter "whether a prisoner faces an excessive risk ... for reasons personal to

15  him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

16      The inmate must also satisfy the subjective element. This means that the prison

17  official being sued must have known of and disregarded the risk to the inmate's safety.

18  *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v.*

19  *Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate

20  that the defendants' actions were both an actual and proximate cause of their injuries."

21  *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*,

22  591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563

23  U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

24      Here, Defendants argue McGuire cannot show Defendants were deliberately

25  indifferent under either the objective or subjective prongs. Specifically, Defendants argue

26  that although there were times when outdoor exercise was limited due to COVID-19 and

27  other emergency situations, McGuire was not prevented from *all* exercise and further,

28  McGuire does not show than he was harmed by any alleged lack of outdoor exercise.

(*See* ECF No. 43.) McGuire argues he is entitled to summary judgment because he was not provided five hours a week of outdoor recreation time. (ECF No. 33 at 8.)

As explained above, the evidence before the Court shows that while housed at ESP, McGuire was permitted tier and yard time once a day, every day of the week, for roughly an hour and forty-five minutes. (ECF No. 43-6; ECF No. 43-3 at 3.) Yard time occurred within the unit's recreation yard. (ECF No. 43-7; ECF No. 43-3 at 3.) During McGuire's tier and yard time, McGuire had the opportunity to shower, use the phone, enjoy recreation yard time, interact with other inmates, and participate in educational courses and institutional television via correspondence. (ECF No. 43-7 at 10-11; ECF No. 43-3 at 3.)

While housed at HDSP, McGuire was permitted out-of-cell time up to one hour per day, seven days a week, as possible. (ECF No. 43-8; ECF No. 43-4 at 3.) While on tier time, McGuire had the opportunity to shower, use the phone, interact with other inmates, and participate in educational courses as eligible. (ECF No. 43-9; ECF No. 43-4 at 3.) Furthermore, McGuire was scheduled to attend outdoor yard time at least two hours a week. (ECF No. 43-11; ECF No. 43-4 at 3.)

To the extent McGuire believes he is constitutionally entitled to five hours of outdoor recreation time per week, this is untrue. There is no bright-line rule that states the Constitution mandates outdoor recreation or a certain number of hours of outdoor recreation time. Instead, the Ninth Circuit has explained that the Constitution requires providing inmates with "outdoor recreation opportunities, or *otherwise meaningful recreation.*" *Norbert v. City and Cnty. of San Francisco*, 10 F.4th 918, 932 (9th Cir. 2021) (citing *Short v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018)).

Nonetheless, Defendants have established that McGuire was afforded the opportunity for both indoor and outdoor recreation time during the time in question. McGuire does not dispute that he was afforded opportunities for other meaningful recreation, such as on the tier or in his cell. (*See* ECF No. 33.) McGuire has also not identified any risk of harm, substantial or otherwise, from having exercise time take place

1   indoors, as opposed to outdoors. *See Farmer*, 511 U.S. at 828 ("cruel and unusual

2   punishment" under the Eighth Amendment requires a showing of "a substantial risk of

3   serious harm"). Further, McGuire does not allege or provide evidence that when

4   recreation was limited due to lockdowns for emergency situations such as COVID-19, that

5   these lockdowns were unnecessary. Thus, he cannot establish that the Defendants knew

6   of and disregarded a risk to his health.

7       For all these reasons, Defendants have met their burden on summary judgment

8   as they have submitted admissible evidence establishing that they did not disregard a risk

9   to McGuire. The burden now shifts to McGuire to establish that a genuine issue of material

10  fact actually exists. McGuire must "go beyond the pleadings" to meet this burden. *Pac.*

11  *Gulf Shipping Co.*, 992 F.3d at 897. However, McGuire has not provided any facts to show

12  that Defendants knew of *and disregarded* a serious risk by occasionally restricting outdoor

13  exercise due to emergency situations. Thus, McGuire has failed to meet his burden on

14  summary judgment to show an issue of fact that Defendants were deliberately indifferent

15  to McGuire.

16      As Defendants have met their burden on summary judgment, and McGuire has not

17  established that a genuine issue of material fact exists, Defendants' motion for summary

18  judgment should be granted and McGuire's motion for summary judgment should be

19  denied.

20      **B.    Fourteenth Amendment – Procedural Due Process**

21      Fourteenth Amendment claims for denial of procedural due process entail two

22  components. First, the court must determine that the plaintiff possessed a constitutionally

23  protected interest, such that due process protections apply. Second, and if so, the court

24  must examine the level of due process demanded under the circumstances. A claim lies

25  only where the plaintiff has a protected interest, and the defendant's procedure was

26  constitutionally inadequate.

27      The Fourteenth Amendment of the United States Constitution guarantees all

28  citizens, including inmates, due process of law. However, the Constitution protects only

certain interests with the guarantees of due process; an inmate's right to procedural due process arises only when a constitutionally protected liberty or property interest is at stake. *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). Such interests may arise from the Constitution itself or from state law.

Under the Due Process Clause, an inmate does not have liberty interests related to prison officials' actions that fall within "the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin v. Conner,* 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976)). The Clause contains no embedded right of an inmate to remain in a prison's general population. *Id.* at 485–86. Further, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms,* 459 U.S. 460, 468 (1983), *overruled on other grounds by Sandin,* 515 U.S. at 472–73. "Thus, the hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, does not violate the due process clause because there is no liberty interest in remaining in the general population." *Cnty. of Kern,* 45 F.3d at 1315. At bottom, "[o]nly the most extreme change in conditions of confinement have been found to directly invoke the protections of the Due Process Clause...." *Chappell v. Mandeville,* 706 F.3d 1052, 1063 (9th Cir. 2013).

State law also may create liberty interests. Where segregated housing or other prison sanctions "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]" due process protections arise. *Sandin,* 515 U.S. at 483–84. What matters is not the particular label or characterization of the segregation or sanction, but instead, its underlying nature: "[n]o matter how a prisoner's segregation (or other deprivation) is labeled by the prison or characterized by the prisoner, a court must examine the substance of the alleged deprivation and determine whether it constitutes an atypical and significant hardship...." *Hernandez v. Cox,* 989 F.Supp.2d 1062, 1068–69 (D. Nev. 2013).

When conducting the atypical-hardship inquiry, courts examine a "combination of conditions or factors...." *Keenan,* 83 F.3d at 1089. These include: (1) the extent of difference between segregation and general population; (2) the duration of confinement; and (3) whether the sanction extends the length of the prisoner's sentence. *See Serrano,* 345 F.3d at 1078 (citing and discussing *Sandin,* 515 U.S. at 486–87). That a particular punishment or housing placement is more restrictive than administrative segregation or general population privileges is, alone, not enough: even where "the conditions in segregation are worse than those a prisoner will typically encounter in prison, the Court must still consider whether the conditions are extreme enough in nature and duration or whether they will necessarily affect the length of a prisoner's sentence." *Hernandez,* 989 F.Supp.2d at 1069. In addition, the Supreme Court has held that the loss of prospective work and good-time credits that ultimately may affect an earlier release from incarceration is "too attenuated" to support an atypical hardship finding under the third factor. *See Sandin,* 515 U.S. at 487. "Typically," as the Ninth Circuit has stated, "administrative segregation in and of itself does not implicate a protected liberty interest" under the *Sandin* factors. *Serrano,* 345 F.3d at 1078.

The basis of McGuire's due process claim is his assertion that he was denied a hearing before Defendants deprived him of outdoor recreation time and further that he was not transferred or placed in Ad-Seg.

However, as explained above, the Court does not find McGuire was deprived of outdoor recreation time and even if he were, the Court finds that McGuire received adequate due process upon being placed in Ad-Seg.

Specifically, the evidence before the Court reflects the following: on August 18, 2020, McGuire was transferred from ESP to HDSP due to the de-population of ESP. (ECF No. 43-1 at 4; ECF No. 43-2 at 8.) When McGuire arrived at HDSP, he received a due process hearing and was housed in Unit 3, Pod A. (*Id.*) According to McGuire's case notes, he was to remain in administrative segregation ("Ad-Seg") pending a full classification hearing for proper placement. (ECF No. 43-2 at 8.) On September 23, 2020,

1  McGuire received an Ad-Seg review and was to remain in Ad-Seg pending Warden

2  approval to be placed in general population. (*Id.* at 9.) On September 29, 2020, McGuire

3  received another classification review. (*Id.*) Due to a history of institutional violence and

4  a high number of points, McGuire was housed in a special management unit ("SMU"),

5  which is a close custody unit. (*Id.*; ECF No. 43-4 at 3.) On November 2, 2020, McGuire

6  had a periodic review of his custody status, and was to remain in SMU, close custody.

7  (ECF No. 43-2 at 9.)

8       On March 30, 2021, McGuire was placed back into Ad-Seg from SMU due to

9  pending notice of charges and was advised he would remain in that unit pending the

10  outcome the charges. (*Id.* at 9-10.) April 29, 2021, McGuire was moved back to SMU

11  after being found not guilty of the charges. (*Id.* at 10.) On June 10, 2022, McGuire returned

12  to Ad-Seg due to institutional restructuring, where he remained until he was transferred

13  back to ESP on September 27, 2022. (*Id.* at 11.) McGuire continued to receive periodic

14  reviews of his custody status throughout this entire timeframe. (*Id.* at 10-12.)

15      Based on the evidence before the Court, it is undisputed that McGuire was given

16  notice of and was present for several classification hearings during the time in question.

17  McGuire cannot and has not established that he was deprived of a liberty interest. When

18  "prison housing placement . . . is administrative, not disciplinary 'informal, nonadversary

19  review' is sufficient'" to satisfy due process. *Ashker v. Newsom*, 81 F.4th 863, 892 (9th

20  Cir. 2023) (citing *Hewitt*, 459 U.S. at 476). "Those procedures include notice of the reason

21  for confinement, an opportunity to be heard, and periodic review." *Id.* Thus, because

22  McGuire was given notice of the reason for his confinement, an opportunity to be heard,

23  and periodic review, McGuire was provided with all that due process requires.

24      As such, the Court recommends that Defendants' motion for summary judgment

25  be granted and McGuire's motion for summary judgment be denied.[3]

26

27  [3]    Because the Court recommends Defendants' motion for summary judgment be
granted on the merits of the claims, it need not address Defendants' other procedural

28  arguments, including qualified immunity.

## IV.    CONCLUSION

For the reasons stated above, the Court recommends that McGuire's motion for summary judgment, (ECF No. 33), be denied and Defendants' motion for summary judgment, (ECF No. 43), be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that McGuire's motion for summary judgment, (ECF No. 33), be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 43), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk of the Court **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**:  December 6, 2024    .

_____
**UNITED STATES MAGISTRATE JUDGE**